UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY WEINTRAUB,

    Plaintiff,

Case No. 13-11481

Hon. Denise Page Hood

v.

CITY OF DEARBORN,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE,
AND
NOTICE SETTING FINAL PRETRIAL CONFERENCE
AND TRIAL DATES**

**I.    BACKGROUND**

Plaintiff Leroy Weintraub filed the Complaint against Defendant City of Dearborn on April 1, 2013 alleging: a Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1211(7) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); and a Violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 (Count II). (Comp., Doc. No. 1)

In his Complaint, Weintraub asserts he was hired by the City of Dearborn on

October 18, 1994 as a Water and Sewer Technician.  (Comp., ¶ 9) Weintraub was discharged by the City of Dearborn in a December 28, 2011 notice stating, "[b]ecause you are unable to secure MDOT [Michigan Department of Transportation] card due to your medical condition, you'll be released from your position as water and sewer technician effective December 30, 2011."  (Comp., ¶ 10) By doing so on December 30, 2011, Weintraub claims the City of Dearborn avoided giving him another term of eligible FMLA leave beginning January 2, 2012. (Comp., ¶ 12) Weintraub asserts that he was wrongfully discharged because of his medical issues even though his doctor had assured the City of Dearborn that his diabetes and blood pressure were under control.  (Comp., ¶¶ 11, 13) Weintraub further asserts that the City of Dearborn harassed him and forced him to submit to sugar tests on a daily basis and in the presence of his superiors.  (Comp., ¶ 18) He states that the City of Dearborn refused to sign a waiver that would have allowed him to obtain an MDOT card. (Comp., § 17) Weintraub claims the City of Dearborn refused his request for accommodation, even though he was qualified for the available open positions.  (Comp., ¶ 14)

      This matter is before the Court on the City of Dearborn's Motion for Summary Judgment (Doc. No. 13) and Weintraub's Motion in Limine (Doc. No. 14). Responses and replies have been filed and a hearing was held on the matter.

II.      **ANALYSIS**

2

### A.     Motion for Summary Judgment

#### 1.     Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### 2. Limitations Period

The City of Dearborn argues that Weintraub's action is barred because his actual last day of work was September 7, 2011 and that the December 28, 2011 letter informing Weintraub was released from his position did not control the date his ADA claim began to accrue. (Motion, Ex. 7) The City of Dearborn claims that because Weintraub had not been at work since September 7, 2011 and was on an unpaid medical leave after that date, the alleged discrimination could not have occurred after that date. The City of Dearborn further claims that Weintraub's October 9, 2012 charge of discrimination filed with the EEOC was untimely filed beyond the 300 days from the September 7, 2011 date. (Motion, Ex. 14)

Weintraub responds that the discriminatory act occurred on the date of his discharge, December 28, 2011. (Motion, Ex. 7) He also claims that the refusal to make reasonable accommodations for his return to work after he was discharged also constitutes unlawful employment practices. He argues that his October 9, 2012 charge of discrimination was timely based on the December 28, 2011 date.

A Michigan plaintiff claiming a ADA or Title VII violation must file an

administrative charge before the Equal Employment Opportunity Commission ("EEOC") within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Nichols v. Muskingum College,* 318 F.3d 674, 679-80 (6th Cir. 2003). A timely filing of a charge of discrimination with the EEOC is a precondition to filing a suit with the federal district court, and if the filing is untimely, the claim is barred. *See, Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 393 (19821). The Supreme Court has held that "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* The cause of action accrues in a discrimination claim when a plaintiff has notice of the termination or when the discreet act of discrimination occurred. *Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir. 1987). "Repeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Id.* (quoting *EEOC v. McCall Printing Corp.,* 633 F.2d 1232, 1237 (6th Cir. 1980)). The "continuing violation" doctrine is only applied where the defendant had subjected a plaintiff to discriminatory working conditions throughout the term of his or her employment; but the discrete decision not to employ a plaintiff in other positions after receiving a notice of termination is not

5

the same as the daily discriminatory working conditions suffered by a plaintiff. *Id.* at 948.

Based on the parties' submissions, the Court finds that Weintraub's discrimination claim was timely filed before the EEOC. The evidence shows that the City of Dearborn sent a December 28, 2011 letter to Weintraub stating, "Because you are unable to secure an MDOT card due to your medical condition, you will be released from your position as Water and Sewer Technician 1 effective December 30, 2011." (Motion, Ex. 7) The City of Dearborn's argument that the claim began to accrue on Weintraub's actual last day of work on September 7, 2011 is not supported by any evidence, other than his time sheet indicating he was at work on that day. There is no evidence submitted by the City of Dearborn that on September 7, 2011, Weintraub was notified he no longer had a position with the City of Dearborn, despite being on unpaid medical leave after that date. It was not until December 28, 2011 when he was notified he was released from his position. From the December 28, 2011 date, the Court finds that Weintraub's EEOC claim filed on October 9, 2012 was timely filed within the 300-day limitation period.

### 3. ADA Disability Discrimination Claim-Termination

The City of Dearborn argues that Weintraub is not qualified to perform the essential functions of his job as a Water Sewerage Technician I because he could not

obtain a valid Michigan Commercial Driver's License ("CDL") and an MDOT card. The City of Dearborn claims that Weintraub admitted at his deposition that his position required an MDOT card and that he could not obtain such. (Motion, Ex. 5, Weintraub Dep. at 8)

Weintraub responds that the City of Dearborn cannot point to any function in the job description which he was unable to perform. He states that he is able to perform all duties and responsibilities required by the City of Dearborn, including performing skilled construction, maintenance and repair work of the utility distribution and collection systems. The only item the City of Dearborn points to is the lack of an MDOT card, which Weintraub claims can be waived. He asserts that the City of Dearborn used its own doctor's evaluation to decide against obtaining the MDOT waiver. Weintraub claims that his doctor notified the City of Dearborn that his medical issues were under control. He states that the City of Dearborn offered no conclusive evidence that Weintraub's health was not under control or jeopardized public safety. Weintraub argues that the City of Dearborn failed to substantiate why it imposed the MDOT card requirement for the position.

The City of Dearborn replies that the basic qualifications for Weintraub's position as a Water Sewerage Technician I includes possession of a valid CDL and an MDOT card. The position required Weintraub to operate vehicles including, "a

backhoe, service truck, dump truck, vactor, sewer camera vehicle, and other equipment of comparable complexity." (Motion, Weintraub Dep., Ex. 4) The City of Dearborn argues that Weintraub's accident on July 7, 2011 shows that he struck another vehicle while operating a City vehicle because he had "issues with his blood sugar levels/medications." (Motion, Ex. 12) This shows, the City of Dearborn claims, that Weintraub's health issues are a factor in his position. The City of Dearborn states that none of the medical records, including those of Weintraub's own doctor, indicate that Weintraub is able to safely operate a vehicle. The medical records indicate that his blood sugar and blood pressure levels were unacceptable. (Reply, Ex. 2)

As to Weintraub's argument that the City of Dearborn failed to waive the MDOT requirement, the City of Dearborn asserts that it does not have the authority to waive the MDOT card requirement under Michigan law. "A person who is not physically qualified to drive ... and who is otherwise qualified to drive a commercial motor vehicle may drive a commercial vehicle if the motor carrier division of the department of state police or the appeal board has granted a waiver to that person." M.C.L. § 480.13(2). The City of Dearborn argues that it was Weintraub who failed to obtain such a waiver from the state police or the appeal board.

Without direct evidence of disability discrimination, the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1972) is applicable under the ADA. *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 453 (6th Cir. 2004). The ADA prohibits discrimination against a qualified individual "on the basis of disability." 42 U.S.C. § 12112(a).[1] A plaintiff is required to establish a *prima facie* case under the ADA by showing that: 1) he is disabled; 2) he is otherwise qualified for the position, with or without accommodation; 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open or the individual was replaced. *Whitfield v. Tennessee,* 639 F.3d 253, 258-59 (6th Cir. 2011). The ADA defines "qualified individual":

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

The latest position Weintraub had with the City of Dearborn was as a Water & Sewer Technician I. The "Necessary Special Qualifications" and "Required

---

[1] The ADA Amendments Act of 2008 became effective January 1, 2009. Prior to this date, the ADA prohibited discrimination "because of" an individual's disability. The 2008 amendments changed the language prohibiting discrimination "on the basis" of disability.

Qualifications" sections provide, "Possession of a valid CDL Operators license A." (Motion, Ex. 4) Some of the "Essential Job Functions" include: "[o]perates a backhoe, service truck, dump truck, vactor, sewer camera vehicle, and other equipment of comparable complexity" and "[o]perates a City vehicle to visit job sites, including construction sites without barrier free access." (Motion, Ex. 4) In light of the written job description submitted by the City of Dearborn which sets forth the noted requirements and job functions, this is evidence under the ADA that these requirements and job functions are essential to the position of Water & Sewer Technician I. Weintraub admitted in his deposition that one of the requirements of the position was to have the CDL and MDOT card, but that he could not maintain the MDOT card. (Motion, Ex. 4, Weintraub Dep. at 6-8) Weintraub testified that the MDOT was required in order to drive the vactor. (*Id.* at 8)

Because Weintraub was unable to obtain an MDOT card, required for his position, Weintraub could not perform the essential functions of driving various vehicles. As to his argument that the City of Dearborn could have waived the requirement, the statute cited above indicates that it is Weintraub who must obtain such a waiver and that he failed to do so. The Court finds that the City of Dearborn has properly supported its argument that Weintraub is unable to perform the essential functions of his position. Weintraub has failed to create a genuine issue of material

10

fact that he is not qualified for the position of Water & Sewer Technician I. Weintraub did not meet his burden to establish a *prima facie* case of discrimination under the ADA.

### 4. ADA Claim-Failure to Accommodate

The City of Dearborn asserts it accommodated Weintraub by allowing him unpaid time off in order to deal with his health issues. It also argues that Weintraub could not have been accommodated by placement in a different position in which a CDL and MDOT card were required because such a transfer would have displaced another employee as an accommodation.

Weintraub responds that the City of Dearborn should have accommodated his disability by waiving the requirement to possess a CDL and MDOT card. Weintraub does not argue that he should have been reassigned to another position in order to accommodate his disability.

In a failure to accommodate claim under the ADA, the plaintiff has the initial burden to show: 1) that he is disabled; 2) that he is otherwise qualified; 3) that his employer knew or should have know of his disability; 4) that he requested a reasonable accommodation; and 5) that his employer failed to provide an accommodation. *Burdett-Foster v. Blue Cross Blue Shield of Michigan,* 574 F. App'x 672, 680 (6th Cir. 2014) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).

"Reasonable accommodation" may include, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "[W]hile job restructuring is a reasonable accommodation, this term only pertains to the restructuring of non-essential duties or marginal functions of a job." *Steward v. New Chrysler*, 415 F. App'x 632, 642 (6th Cir. 2011). The employer has a duty to consider transferring the employee to a different position for which he is otherwise qualified, but the ADA does not require the employer to create a new position for the plaintiff as an accommodation. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). The ADA does not require employers to accommodate individuals by shifting an essential job function onto others. *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2009); 29 C.F.R. pt. 1630, app. § 1630.2(o)("An employer or other covered entity is not required to reallocate essential functions.").

A plaintiff is given some flexibility in how to request an accommodation. *See Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1108 (6th Cir. 2008)(requests could be written or oral). A jury might infer from the context of the

request that it is driven by medical restrictions. *Smith v. Henderson,* 376 F.3d 529, 535 (6th Cir. 2004). Letters from physicians submitted to the employer are sufficient to notify an employer of the need to accommodate a disability. *See Cehrs v. Ne. Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 783-84 (6th Cir. 1998).

Weintraub is unable to meet his burden to show a *prima facie* case of failure to accommodate under the ADA since his only proposed accommodation is to restructure his job duties so they do not include a CDL or MDOT card. As the Sixth Circuit has noted, such a restructure of a position "only pertains to the restructuring of non-essential duties or marginal functions of a job." *Steward*, 415 F. App'x at 642. The City of Dearborn has shown that the requirement to possess a CDL and MDOT card is an essential job function. The City of Dearborn is not required to restructure the Water & Sewer Technician I position to eliminate such an essential requirement from the position. As admitted by Weintraub in his deposition, the position includes operating a vactor which requires an MDOT card. (Motion, Ex. 4, Weintraub Dep. at 8) Weintraub's failure to accommodate claim that the City of Dearborn must restructure his position so that he is not required to have a CDL and MDOT card cannot stand.

      **5.**    **FMLA Claim**

The City of Dearborn did not move to dismiss Weintraub's FMLA claim. In

relation to its ADA arguments, the City of Dearborn did note that it has provided Weintraub with the 12 weeks required under the FMLA. Weintraub claims in his response that he is entitled to another 12 weeks under the FMLA after January 1, 2012, but because he was terminated effective December 30, 2011, the City of Dearborn prevented him from obtaining another FMLA leave.

The FMLA permits eligible employees to take up to twelve weeks of unpaid leave during any 12-month period for family or medical reasons. 29 U.S.C. § 2612. The FMLA "prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave." 28 U.S.C. § 2612(a)(1); *Bryant v. Dollar General Corp.*, 528 F.3d 394, 501 (6th Cir. 2008). An "eligible employee" means an employee who has been employed for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. 29 U.S.C. § 2611.

The burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is applicable under the FMLA. *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075 (E.D. Mich. 1997). Where a plaintiff lacks direct evidence of the employer's discriminatory intent, the plaintiff must first establish a *prima facie* case of adverse employment action based on a protected characteristic; then, the employer must produce a non-discriminatory reason for the

action, which the plaintiff must attack by demonstrating it is pretextual under the *McDonnell Douglas* burden shifting analysis. *Stubl*, 984 F.Supp. at 1090-1091. Courts have applied the *prima facie* requirements under Title VII and the ADA to FMLA claims. A plaintiff must establish a *prima facie* case under the FMLA:

> 1) engaged in an activity protected by the FMLA;
> 2) that the exercise of his/her protected rights was known to defendant;
> 3) that defendant thereafter took an employment action adverse to the plaintiff; and
> 4) that there was a causal connection between the protected activity and the adverse employment action.

*Id.* at 1090, *citing Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Once the plaintiff proves a *prima facie* case, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." *Stubl*, 984 F.Supp. at 1091. Once the employer meets the burden of articulation, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason proffered was a mere pretext. *Id.*

The City of Dearborn did not move to dismiss this claim and did not respond to Weintraub's argument in his response that he was prevented from exercising his right under the FMLA to seek another leave after January 1, 2012 since the City of Dearborn terminated him effective December 30, 2011. The Court will not consider this issue since it was not properly raised by the defense and the Court cannot properly

15

review the merits of the FMLA claims. Weintraub also did not submit any evidence that he is an eligible employee under the FMLA. The FMLA claim remains at this time.

### B. Motion in Limine

Weintraub seeks to exclude as evidence at trial the letter from the EEOC (Motion for SJ, Doc. No. 13, Pg ID 157-58) and the City of Dearborn's offer to settle the claim made to Weintraub (Motion for SJ, Doc. No. 13, Pg ID 98-101). Weintraub did not attach the documents he sought to be excluded, but the Court assumes he is referring to the two documents attached to the City of Dearborn's Motion for Summary Judgment identified as Document No. 13 on the Court's docket. The City of Dearborn opposes excluding the two documents arguing they are relevant to the claims at issue.

As to the January 10, 2013 letter from the EEOC dismissing Weintraub's charge and finding in favor of the City of Dearborn, the Court finds that this letter is no longer relevant since it addressed Weintraub's claims under the ADA. The ADA claims have now been dismissed. Since there is no argument that the EEOC letter is relevant to the remaining FMLA claim, the Court, at this time, will exclude the letter as evidence at trial. The Court may revisit this issue if the City of Dearborn can show at trial that this letter is relevant to the remaining FMLA claim.

Regarding the offer to settle the claim, the Court finds that the negotiations between the City of Dearborn, Weintraub and the Union on behalf of Weintraub are not relevant to the remaining FMLA claim. Even if the negotiations are relevant to the FMLA claim, the Court excludes such evidence under Fed. R. Evid. Rule 408 which excludes evidence of negotiations compromising a claim. Fed. R. Evid. 408(a). Unless the City of Dearborn at trial can show relevance or any of the exceptions including witness bias or prejudice, the Court will not allow the evidence of any negotiations between the parties.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment **(No. 13)** is GRANTED as to the claims under the Americans with Disabilities Act under Count I of the Complaint, but DENIED as to the claim under the Family Medical Leave Act under Count II of the Complaint. The FMLA claim in Count II remains.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine **(No. 14)** is GRANTED, as more fully set forth above.

IT IS FURTHER ORDERED that a Final Pretrial Conference is set for **May 26, 2015, 2:00 p.m.** Parties with authority to settle must appear at the conference. The proposed Joint Final Pretrial Order under E.D. Mich. LR 16.2 must be submitted to

chambers by **May 19, 2015**.  The Trial is set for **June 16, 2015, 9:00 a.m.**

                               S/Denise Page Hood
                               Denise Page Hood
                               United States District Judge

Dated:  March 31, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2015, by electronic and/or ordinary mail.

                               S/LaShawn R. Saulsberry
                               Case Manager